IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD MANUEL BURGOS,

       Plaintiff,                  No. 2:10-cv-3274 GEB EFB P

vs.

ROBERT LONG, et al.,

       Defendants.           FINDINGS AND RECOMMENDATIONS

/

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. All defendants move for summary judgment filed by. Dckt. No. 93. For the reasons explained below, the undersigned recommends that the motion for summary judgment be denied.

**I.    The Complaint**

      This action proceeds on the verified complaint filed December 7, 2010. Dckt. No. 1. In the complaint, plaintiff asserts that defendants were deliberately indifferent to his medical needs when they required him to work at a porter job which he could not perform due to various medical ailments. *Id.* at 4-10.[1] Specifically, plaintiff alleges:

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

1

Since 1989, plaintiff has been treated by medical staff in the California prison system for "seizures, falls, serious injuries, physical disabilities and severe pain due to permanent nerve damage on the right side of head, facial fractures on right side of nose and fractures under the right eye along the sinus box." *Id.* at 4. Plaintiff also suffers from permanent nerve damage in his neck and lower back. Plaintiff's injuries cause plaintiff to suffer seizures, falls, and further injuries and ailments (e.g., broken bones, migraines, blurred vision, dizziness, headaches, sinus infections, nose bleeds, sensitivity to nose and light, ambulatory problems, and severe pain). *Id.* One such seizure caused plaintiff permanent nerve damage in his right hip, leg, and foot. *Id.* Because of that nerve damage, plaintiff's right hip and leg can give out and make plaintiff fall. *Id.*

Due to his medical problems, plaintiff's medical providers have prescribed him physical limitations governing the type of work he may perform: "Work sitting position only; no work on slippery floors; no assignment to yard areas of grass-pollen producing plants; no dust, no pushing/pulling/mopping/bending/stretching/stooping." *Id.*

On March 26, 2009, defendant Hayward, working in the Inmate Assignment Office at California State Prison, Solano ("CSP-Solano"), assigned plaintiff to work as a porter. *Id.* at 5. The porter job requires standing and working on slippery floors. *Id.* Plaintiff wrote to defendant Hayward, requesting that he be unassigned from the job and providing documentation of his physical limitations. *Id.* at 5-6. On June 16, 2009, Lisa Rodriguez, an office technician in the Inmate Assignment Office replied to plaintiff, recommending that he be seen by the Unit Classification Committee ("UCC"). *Id.* According to Ms. Rodriguez, if UCC determined that plaintiff's medical conditions required that he be unassigned from the job, it would direct the Inmate Assignment Office to unassign him. *Id.*

In the meantime, from April 9, 2009 through August 12, 2009, plaintiff's medical providers prescribed "lay-ins" (i.e., documentation excusing plaintiff from work), "due to frequency of seizures-falls-new-injuries and severe pain." *Id.* at 5. Nevertheless, defendant

Rosario ordered plaintiff to report to work "[o]n April 18, 2009 through September 22, 2009." *Id.* at 6. Plaintiff says that he did so despite severe pain. *Id.* On July 12, 2009, defendant Rosario issued two disciplinary chronos to plaintiff, the first for plaintiff's refusal to report to work and the second documenting his observation of plaintiff moving his mattresses and property to a new cell by bending down and picking them up and pulling a "flat cart." *Id.* at 7.

Plaintiff submitted several requests to defendant Racklin to be unassigned from the porter job. *Id.* at 7-8. Plaintiff attached physical limitations chronos, medical documentation of recent injuries to his shoulder and back, previous UCC chronos unassigning plaintiff from porter and yard crew jobs due to his medical conditions, and medical lay-ins. *Id.*

On April 21, 2009, plaintiff appeared before the UCC, comprised of defendants Racklin, Palmer, Sanchez, and Long. *Id.* at 8. The committee memorialized the meeting, in part, by stating:

> During UCC "S" complained of being assigned as a Porter in Building 4, stating he has medical restrictions that limit him from working. "S" was advised that due to the Armstrong Remedial Plan his supervisor must attempt to provide a reasonable accommodations [sic] before he can be reassigned. "S" was told that written documentation from his work supervisor is required as to the reasonable accommodations made an [sic] at such time appropriate action will take place.

*Id.*

During the meeting, defendant Long told plaintiff, "If you don't work, we will transfer you." *Id.* Defendant Long reiterated this sentiment in meetings at the Program Office between April 29, 2009 and September 22, 2009, stating, "I have no doubt you have serious medical problems. If you don't work I will transfer you." *Id.* Plaintiff provided defendant Long with significant documentation of his medical issues, including physical limitations chronos, medical lay-ins, and previous UCC chronos unassigning plaintiff from porter and yard crew jobs due to his medical conditions. *Id.* at 8-9. Defendant Long nevertheless ordered plaintiff to report to work or to the Program Office "continuously" from April 29, 2009 through September 2009, causing plaintiff severe pain. *Id.* at 9.

On July 23, 2009, Correctional Officer E. Colder issued a Notice of Classification Hearing, stating his recommendation that plaintiff "be scheduled for the next available UCC to be removed from his assigned position due to his medical condition[.]" *Id.* at 6.

On November 18, 2009, the Inmate Appeals Branch ordered the UCC to review plaintiff's "CDC 7410, dated April 30, 2009, to determine [plaintiff]'s ability to perform the duties of a porter."[2] *Id.* at 9. In response, defendant Long wrote, "On 11/19/09 the 'S' case was reviewed by UCC. . . . Pursuant to current Armstrong and regulations, the 'S' will be reasonable [sic] accommodated in available work, education and training programs. His C-File has no medical preclusions that cannot be reasonable [sic] accommodated in porter position." *Id.*

Plaintiff alleges that the foregoing facts show defendants' deliberate indifference to his serious medical needs through their interference with his medically-prescribed lay-ins and physical limitations. *Id.* at 10-11.

## II.    Defendants' Factual Assertions

Defendants do not dispute plaintiff's description of his medical problems or that he was assigned to work as a porter on March 26, 2009. Dckt. No. 93-2, Defs.' Statement of Undisputed Facts ISO Mot. for Summ. J. (hereinafter "DUF") 1. Defendant Rosario was one of plaintiff's supervisors at the porter job. DUF 9.

The parties do not dispute that plaintiff asked to be unassigned from the porter position at his April 21, 2009 UCC review, before defendants Sanchez, Racklin, Palmer. (Defendants do not mention whether defendant Long was also a part of the April 21, 2009 review, as plaintiff asserts.) Defendants assert that defendant Sanchez responded that plaintiff must submit

---

[2] It is apparent from the evidence submitted in connection with the instant motion that the form referred to by the Inmate Appeals Branch is a "Comprehensive Accommodation Chrono" signed by the Chief Medical Officer, specifying the following physical limitations to plaintiff's job assignments: "no pushing and pulling; no mopping; no prolonged standing or walking more than 15 minutes; no work with heavy machinery; no driving motor vehicles; no reaching, bending, squatting, stretching, stooping; no work on slippery floors" for a duration of one year. Dckt. No. 97-1 at 29.

4

documentation from his work supervisor but also CDCR medical staff verifying that his disabilities could not be reasonably accommodated in the porter job despite reasonable attempts to do so. DUF 20. Because plaintiff "had not submitted the requisite documentation [from his supervisor] evidencing such failed attempts to reasonably accommodate his work-related disabilities," the UCC could not unassign plaintiff at that time. DUF 21, 25-26, 30. Defendants Sanchez, Racklin, and Palmer did not have any further interaction with plaintiff after the April 21, 2009 UCC review. DUF 24. Defendants deny that any of them ever threatened to transfer plaintiff if he refused to work. DUF 22, 27, 31, 43.

  Defendants do not dispute that plaintiff presented defendant Rosario with lay-ins between April 29, 2009 and August 12, 2009 authorizing his absence from work. DUF 10. Defendant Rosario claims that he never ordered plaintiff to violate these lay-ins by returning to work prior to their expiration dates. DUF 12. Defendant Rosario asserts that plaintiff provided him with the Comprehensive Accommodation Chrono (*see* footnote 2) on or around April 30, 2009 and demanded to be removed from the porter position. DUF 13. Defendant Rosario responded that he would reasonably accommodate plaintiff's restrictions in the porter job by allowing plaintiff to discharge his duties by updating cell "door tags." DUF 14. This task would require plaintiff to sit at a table and verify the information on the door tags, revise the tags to reflect changed cell assignments, and replace old tags with revised tags. *Id.* Plaintiff again asked to be unassigned, and defendant Rosario told plaintiff he lacked authority to do so and that only the UCC had such authority. DUF 15, 16. According to defendants, plaintiff never told defendant Rosario that he suffered a work-related injury. DUF 17.

  The parties also do not dispute that plaintiff made a written request to defendant Hayward on June 1, 2009 to be unassigned from the porter job, accompanied with supporting documentation, or that defendant Hayward's office technician L. Rodrigues responded that defendant Hayward lacked that authority and plaintiff would have to seek unassignment from the UCC. DUF 34, 36, 37.

Defendant Long presided over UCC hearings for plaintiff on November 19, 2009 and December 30, 2009. DUF 40. Defendant Long does not dispute that, in response to the modification order issued in response to plaintiff's appeal regarding his assignment to the porter job, he concluded that the form 7412 (*see* footnote 2, above) and plaintiff's C-file did not indicate that plaintiff could not be reasonably accommodated in the porter job. DUF 41, 42.

### III. Plaintiff's Response to Defendants' Factual Assertions

In response to defendants' proffered facts, plaintiff reiterates that defendant Rosario did order him to work despite his medical lay-in orders between April 19, 2009 and July 14, 2009. Dckt. No. 97, Pl.'s Opp'n to Defs.' Statement of Undisputed Facts (hereinafter "PUF") 12. On July 11, 2009, defendant Rosario issued a written order to plaintiff to report to work and, on many other occasions, issued such orders verbally. *Id.* According to plaintiff, defendant Rosario never offered to accommodate his disabilities by having plaintiff update door tags. PUF 14. Plaintiff asserts that he provided documentation of his disabilities to defendant Rosario, who then had the obligation to inform the UCC that plaintiff could not perform the essential functions of the porter job. PUF 13, 16.

While plaintiff claims to dispute defendants' assertions that he did not provide them with documentation from his supervisor attesting to failed attempts to reasonably accommodate plaintiff that he April 21, 2009 UCC meeting, it is evident that plaintiff provided medical chronos and other such evidence but nothing from his work supervisor at that time. *See* PUF 21. It is also evident that no defendant other than defendant Long has ever told plaintiff that he would transfer plaintiff if plaintiff did not work. *See* PUF 22, 27, 31. Plaintiff reiterates that defendant Long did make such statements, both at the April 21, 2009 review and subsequently in the Program Office. PUF 43.

////

////

////

According to plaintiff, his supervisor Officer E. Colter provided documentation to defendant Racklin that plaintiff could not be reasonably accommodated in the porter job on or after July 23, 2009, but defendants Rosario, Racklin, Sanchez, Long and Palmer refused to review this documentation by convening a new UCC review.  PUF 26, 28, 29.

**IV.     Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 95;

*see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**V.     Analysis**

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference may be manifested by a prison official's intentional interference with a prisoner's medical treatment. *Jett*, 439 F.3d at 1096.

Defendants first argue that they did not violate plaintiff's Eighth Amendment rights because "[t]he deprivation experienced by Plaintiff between March 2009 and December 2009, if any, was not extreme." Dckt. No. 93-1, Defs.' P's & A's ISO Defs.' Mot. for Summ. J. at 10. In defendants' view, plaintiff was already suffering from his injuries when he was assigned to the porter job and has not come forward with evidence that he was further injured in that job.

////

////

1  Plaintiff, however, disputes defendants' assertion that he did not suffer when he was required to
2  report to work and he presents evidence in support of contention.  Dckt. No. 1 at 6, 9 (plaintiff
3  reported to work or the Program Office despite severe pain).

4  In a similar vein, defendants claim that defendants were not subjectively aware that the
5  porter job presented a risk of serious harm to plaintiff because he never complained of a "work-
6  related" injury.  Dckt. No. 93-1 at 14.  While the lack of a prior complaint is a factor to consider,
7  it does not, as a matter of law, equate with lack of substantive awareness of the risk of harm.
8  Plaintiff need not have ever made such a complaint to show that defendants were deliberately
9  indifferent.  *E.g., Quarles v. Palakovich*, 736 F. Supp. 2d 941, 944, 951-52 (M.D. Pa. 2010)
10 (although plaintiff did not complain about a dangerous prison condition, defendants' awareness
11 of that condition could be found based on other evidence); *Johnson v. Cain*, No. 08-0590-FJP-
12 DLD, 2009 U.S. Dist. LEXIS 90697, at *19 (M.D. La. Sept. 3, 2009).  Plaintiff has presented
13 evidence that he consistently complained to defendants that, if he was required to do the porter
14 job, he would suffer due to his medical conditions.  Dckt. No. 1 at 5-9.  That is enough to raise a
15 triable issue of material fact as to whether defendants were aware of plaintiff's serious medical
16 need.

17 Next, defendants argue that defendant Rosario was not deliberately indifferent to
18 plaintiff's medical needs because he offered to accommodate plaintiff by having him update door
19 tags.  Plaintiff, again, disputes this fact.  PUF 14 (defendant Rosario never presented such an
20 accommodation to plaintiff).

21 Defendants next argue that, because plaintiff did not give them enough information
22 substantiating his claim that disabilities prevented him from performing the porter job, they were
23 not deliberately indifferent.  Plaintiff's evidence, however, is that he provided each of the
24 defendants with documentation from medical personnel informing them that he could not do the
25 essential functions of the porter job.  Dckt. No. 1 at 5-9.  Plaintiff's evidence is that he further
26 provided defendant Racklin with a request from his work supervisor that a new UCC review be

11

convened to have plaintiff unassigned from the job due to plaintiff's medical conditions. *Id.* at 6; PUF 26, 28, 29. Thus, the evidence is disputed as to whether defendants were subjectively aware of the risk of harm posed by requiring plaintiff to perform the porter job.

Lastly, defendants argue that they should be granted summary judgment based on qualified immunity. In analyzing an assertion of qualified immunity, the court considers (1) whether the facts show a constitutional violation and (2) whether the constitutional right was clearly established. Defendants contend, generally, that they responded to plaintiff's requests in a manner consistent with CDCR policies and that none of the defendants engaged in constitutionally impermissible conduct. As discussed above, the facts are in dispute as to whether there was a constitutional violation and those disputes preclude summary judgment for the defendants on the assertion of qualified immunity presented here. "If . . . there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested." *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir.2000); *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir.1997) ("[W]here there is a genuine issue of fact on a substantive issue of qualified immunity, ordinarily the controlling principles of summary judgment and, if there is a jury demand and a material issue of fact, the Seventh Amendment, require submission to a jury.").

## VI.   Recommendation

For the above reasons, it is RECOMMENDED that the August 3, 2012 motion for summary judgment (Dckt. No. 93) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 26, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13